# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY L. JACKSON,<br><br>    *Plaintiff*,<br><br>v.<br><br>RICHARD V. SPENCER, Secretary,<br>UNITED STATES DEPARTMENT OF THE<br>NAVY,<br><br>    *Defendant.* | Civil Action No. 16-2186 (DLF) |

## **MEMORANDUM OPINION**

In this action, pro se plaintiff Gary L. Jackson asserts employment discrimination claims based on race, color, and sex against his former employer, the Secretary of the United States Department of the Navy.[1] Compl. at 13, Dkt. 1; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). Jackson seeks injunctive and declaratory relief, as well as damages and attorney's fees, for alleged "retaliation, harassment, and constructive discharge because of [his] race (Afro-American), color [(]Dark Brown), and sex (Male)." Compl. at 13, 17–18. Before the Court is the defendant's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 8. For the reasons that follow, the Court will grant the defendant's motion pursuant to Rule 12(b)(1).

---

[1] At the time Jackson filed his complaint, Ray Maybus was Secretary of the Navy. Richard V. Spencer has since been confirmed as Secretary and was automatically substituted as the defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

Jackson, an African-American male, enlisted in the Unites States Marine Corps on June 1, 1977. Compl. at 1. During his Marine Corps career, Jackson received numerous decorations, letters of appreciation, and commendations. *Id.* He was honorably discharged on January 15, 1991. *Id.*

Jackson's discrimination claims stem from his final Marine Corps assignment to Henderson Hall, Marine Corps Headquarters in Arlington, Virginia. *Id.* at 3. While there, his superiors allegedly retaliated against him for refusing to approve a warehouse inventory inspection in August 1988 and subsequently requesting an investigation by the U.S. Marine Corps Inspector General. *Id.* at 2–4. Thereafter, the Inspector General allegedly failed to investigate Jackson's allegations, and Jackson's chain of command threatened to discharge him from the Marine Corps. *Id.* at 4–5. Jackson's superiors also discussed ordering him to appear before a competency review board but were dissuaded by a gunnery sergeant who expressed concerns about Jackson's harsh treatment. *Id.* at 5. Additionally, Jackson's superiors delayed for a short time, but eventually granted, Jackson's request to attend the Non-Commissioned Officer Academy. *Id.* When Jackson returned to Arlington in late 1988, he was removed from the warehouse chief assignment and placed in a special services storefront manager assignment, one he viewed as inconsistent with his military operational specialty and rank. *Id.* at 6.

As a result of his reassignment and his alleged continued mistreatment, in September 1990,[2] Jackson made a request through his chain of command for "mast"—an opportunity to express his concerns to his commanding officer. *Id.*; *see also* Navy Marine Corps Dir. 1700.23F;

---

[2] According to Jackson's complaint, he first requested mast in September 1990, but this date appears to be inaccurate given Jackson's earlier September 1989 letter requesting mast. *See* Def.'s Mot. to Dismiss, Ex. 1 at 6, Dkt. 8-2.

Def.'s Mem. at 4 n.7. Although his superiors allegedly threatened to demote and discharge him for this demand, Jackson persisted. Compl. at 7. In January 1990, Brigadier General Gail M. Reals reassigned Jackson to the warehouse position. *Id.* Later that year, Captain Jeffrey Nelson, Jackson's former commander, allegedly placed "an unsubstantiated page 11" in his military record for a violation of security procedure, lodged an adverse fitness report against him, and requested a Technical/Incompetence Review Board. *Id.* Jackson filed a rebuttal and requested, without success, to have the adverse fitness report removed. *Id.*

In June 1990, Jackson applied for re-enlistment in the Marine Corps. *Id.* at 9. According to Jackson, his superiors held his application until January 15, 1991, the expiration date for his re-enlistment, and then rushed him through medical discharge processing so that he would be deemed physically fit for discharge, despite his respiratory ailment and other health issues. *Id.* at 9-10. Jackson also alleges that his superiors modified his re-enlistment code—contrary to the Office of the Commandant of the Marine Corps' instructions—to reflect a code of RE-4 (ineligible to re-enlist), rather than RE-3C (eligible to re-enlist). *Id.* at 10-11.

Before his discharge, Jackson's supervisors leveled a wide range of criticisms against him. Among other things, Captain Nelson reported that Jackson did not work well with his peers or supervisors and demonstrated inadequate leadership, poor performance, and antisocial and discriminatory behavior. Dkt. 8-3 at 6. While First Lieutenant Jeffrey Baldyga gave Jackson a favorable review and indicated that he was "ready for promotion," he also noted that Jackson was "not always willing to accept responsibility of his section" and "had difficulty communicating with others." *Id.* at 13. Based on the criticisms of these and other officers, as well as his own personal knowledge, Colonel R. R. Buckley "<u>strongly</u> recommend[ed], for the best interests of the U.S. Marine Corps, that . . . Jackson's request for reenlistment be

3

disapproved." Dkt. 8-8 at 5 (emphasis in original). Colonel Buckley concluded that Jackson was "totally unprofessional, absolutely unqualified to be promoted and should never be considered for reenlistment/retention. He is one of the poorest examples of a [Senior Non-commissioned Officer] . . . ." *Id.*

Before leaving the Marine Corps, Jackson applied to the Board for Correction of Naval Records (the Board) to have derogatory material removed from his fitness records. Dkt 8-2 at 1–3. Jackson's December 4, 1990 application alleged that he had become the target of "retaliation and continual harassment" as a result of his requests to speak to his commanding officer. *Id.* at 1. In support, he included a September 1989 letter in which he requested mast and referred to his change in duties as "an act of discrimination and retaliation" by his superiors who "are prejudiced against blacks who stand up to them." *Id.* at 7.

On January 15, 1991, Jackson was honorably discharged from the Marines. Dkt. 1-2 at 9. Jackson alleges that, thereafter, Captain Nelson blocked Jackson from receiving a Navy Achievement Award for his performance while serving in the warehouse inspection position, as well as a commendation for securing top secret documents discovered in a rental vehicle. Compl. at 8.

In March 1991, Jackson filed a second application with the Board requesting "to have [his] reentry code upgraded." Dkt. 8-3 at 1. In April 1991, the U.S. Marine Corps Performance Evaluation Review Board issued an advisory opinion finding that Jackson's fitness report was appropriate and should remain in his record, and separately determined that the reenlistment code was correctly assigned. Dkt. 8-3 at 4–7. And on April 14, 1992, the Board issued an adverse decision denying both of Jackson's 1990 and 1991 applications. Dkt. 8-5 at 1. The Board concluded that the "evidence submitted was insufficient to establish the existence of probable

material error or injustice." *Id.* The Board found no basis for removing the fitness reports or the adverse page 11 counseling. *Id.* at 2. The Board also determined that the reenlistment code was properly assigned. *Id.*

Following the denial of his two applications, Jackson filed four additional applications with the Board. On October 27, 1992, Jackson alleged that "there was a concerted effort on the part of my superiors to prevent me from re-enlisting" based on "negative generalities" and requested that his reentry code be upgraded from "4" to "1." Dkt. 8-6 at 3. On March 23, 1993, Jackson filed another application requesting the removal of the RE-4 code and raising various other "negative generalities." *Id.* at 1. While Jackson's 1992 and 1993 applications contained new statements relating to his honorable service, the Board consolidated his applications, concluded that the statements did not constitute material evidence warranting reconsideration, and denied Jackson relief. Dkt. 8-7 at 1.

On August 29, 1994, Jackson filed a fifth application with the Board requesting an upgrade of his reentry code. Dkt 8-8 at 1–2. As new evidence, Jackson included his chain of command's recommendation denying his request for reenlistment and a message from the Commandant of the Marine Corps that had not been included in his previous application. *Id.* at 5–7. On October 14, 1994, the Board again refused to reconsider Mr. Jackson's case for lack "any new and material evidence or other matter not previous considered by the Board." Dkt 8-9 at 1.

In a sixth and final May 15, 2000 application to the Board, Jackson alleged that his reentry code was "unjustly entered" and that he did not sign his form for release as required. Dkt. 8-10 at 1. On July 17, 2000, the Board again concluded that Jackson had failed to include any new material evidence and denied Jackson relief. Dkt. 8-11 at 1.

5

Over fourteen years later, on May 15, 2014, Jackson filed a formal employment discrimination complaint against the Marine Corps. Dkt. 1-2 at 124. On June 19, 2015, the Marine Corps issued a final agency decision dismissing Jackson's complaint on the ground that Title VII does not cover uniformed members of the military. *Id.* at 124–126. On July 19, 2016, the Equal Employment Opportunity Commission (EEOC) affirmed the Marine Corps' decision dismissing Jackson's complaint. *Id.* at 112–115. On September 21, 2016, the EEOC denied Jackson's request for reconsideration. *Id.* at 99–100.

On November 2, 2016, Jackson filed this action against the Secretary of the United States Department of the Navy. Compl. at 1. In his complaint, Jackson sets forth general allegations of race, color, and sex discrimination.[3] As specific evidence of discrimination, Jackson alleges that Captain Nelson openly expressed his preference that the "number of Blacks not exceed the number of whites in any one section of the Warehouse." *Id.* at 9. He further alleges, relying on a written statement provided in 1992 by Corporal Wayne Grice, that Corporal Grice overheard Captain Nelson say that Jackson's separation from the Marine Corps "took us a while, but we finally got him. That's one less Black Staff Sergeant." Dkt. 1-2 at 3.

Following his discharge, Jackson sought relief from various sources, including high-level officers in the Marine Corps, Dkt. 1-2 at 28, 74, attorneys, *id.* at 19, members of Congress, *id*. at 29, 71, and the Department of Justice, *id.* at 66. Nonetheless, Jackson claims that he waited more than fifteen years after his honorable discharge to file this action because his chain of

---

[3] For example, Jackson alleges that "[his superiors'] actions constituted employment discrimination, (based on my race, color, and sex)," Compl. at 2; "I was subjected to retaliation, harassment, and constructive discharge because of my race, color, and sex," *id.* at 2; "I sensed that my refusal to sign the inspection report angered the chain-of-command, because of my race, color, and sex," *id.* at 4; "Because of my race, color, and sex, I was constantly harassed by [my civilian supervisor]," *id.* at 6.

6

command refused to offer him assistance and blocked his efforts to redress the retaliation. Compl. at 13. Jackson further asserts that he was unaware of his legal rights. *Id.* at 12–13. According to Jackson, "it did not occur to him that he had been discriminated against" until October 18, 2014, when he revealed the wrongdoing to a friend. *Id.* at 12.

This case was reassigned to the undersigned judge on December 4, 2017. The Secretary now moves for dismissal under Rules 12(b)(1) and 12(b)(6).

## II.  LEGAL STANDARD

Under Rule 12(b)(1), a party may move to dismiss an action when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, to survive a Rule 12(b)(1) motion, the plaintiff must demonstrate that the court has jurisdiction by a preponderance of the evidence. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

When deciding a Rule 12(b)(1) motion, the court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal citation and quotation marks omitted). Those factual allegations, however, receive "closer scrutiny" than they would in the Rule 12(b)(6) context. *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016). Also, unlike when evaluating a Rule 12(b)(6) motion, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction. *See*

*Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). If the court determines that it lacks jurisdiction, the court must dismiss the claim or action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

### III. ANALYSIS

In his complaint, Jackson alleges that Marine Corps officials unlawfully discriminated against him based on his race, color, and sex, in violation of Title VII. Jackson requests the following relief: (1) immediate reinstatement in the Marine Corps with back pay, bonuses, and cost of living allowances; (2) retirement, after one month's reinstatement; (3) compensatory damages in the amount of $300,000; (4) expungement of adverse statements in his military record; (5) attorney's fees; (6) a letter of apology; (7) training for all civilian and military personnel on "MAST, Chapter 138, EEO" procedures; and (8) no future retaliation as a result of this action. Compl. at 17–18.

Although Jackson only asserts claims under Title VII, construing his pro se complaint in the most favorable light, *see Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), the Court will also consider whether Jackson asserts a viable claim for relief under the Military Whistleblowers and Protection Act, the Administrative Procedure Act (APA), or other federal statutes.

#### A. Title VII

Jackson's Title VII claims fail because Title VII does not apply to uniformed members of the armed forces. While this Circuit has not addressed the issue, *see Veitch v. England*, 471 F.3d 124, 127 (D.C. Cir. 2006), every Circuit deciding the question has held that Title VII does not apply to uniformed members of the military. *See, e.g.*, *Fisher v. Peters,* 249 F.3d 433, 438 (6th Cir. 2001); *Brown v. United States,* 227 F.3d 295, 298 (5th Cir. 2000); *Hodge v. Dalton*, 107

F.3d 705, 707–12 (9th Cir. 1997); *Randall v. United States*, 95 F.3d 339, 343 (4th Cir. 1996); *Doe v. Garrett*, 903 F.2d 1455, 1459 (11th Cir. 1990); *Roper v. Dep't of the Army*, 832 F.2d 247, 248 (2d Cir. 1987); *Johnson v. Alexander*, 572 F.2d 1219, 1223–24 (8th Cir. 1978); *see also Collins v. Sec'y of Navy,* 814 F. Supp. 130, 132 (D.D.C. 1993) (dismissing a former Navy lieutenant's Title VII complaint for lack of jurisdiction). There is no dispute that Jackson was a uniformed member of the Marine Corps when the alleged discriminatory acts took place. Compl. at 1–2. Thus, the Court lacks jurisdiction to consider Jackson's Title VII claims.

### B. Military Whistleblower Protection Act

Jackson fares no better under the MWPA because the statute does not "provide . . . any private cause of action, express or implied." *Acquisto v. United States*, 70 F.3d 1010, 1011 (8th Cir. 1995) (per curiam); *accord Penland v. Mabus*, 78 F. Supp. 3d 484, 495 (D.D.C. 2015) (stating that a violation of the MWPA "cannot be rectified by this court because the MWPA does not provide a private right of action"). "Indeed, no judicial review is available under the MWPA because Congress precluded alternative fora by providing a specific form of redress in the statute." *Bias v. United States*, No. 17-2116, 2018 WL 566415, at *3 (Fed. Cir. Jan. 26, 2018); *see also Rana v. Dep't of the Army*, No. 15-cv-0957, 2015 WL 3916361, at *1 (D.D.C. June 22, 2015) (dismissing service member's MWPA claims for lack of subject-matter jurisdiction). Accordingly, to the extent that Jackson alleges a claim under the MWPA, this Court lacks jurisdiction to consider it.

### C. Administrative Procedure Act

Applying "familiar principles of administrative law," however, this Court has the authority to review decisions rendered by the Board in Jackson's case. *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (*Kreis I*); *see also Rodrigues v. Penrod*, 857 F.3d

9

902, 906 (D.C. Cir. 2017) ("[D]istrict courts have routinely reviewed these board decisions in the first instance."). "Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *see also* 5 U.S.C. § 706(2)(A). Courts are equipped to determine whether a board of correction "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005) (quotation marks omitted) (*Kreis II*). But because "courts are particularly unfit to review the substance of military decisions," decisions of boards of corrections are entitled to an "unusually deferential application of the arbitrary and capricious standard." *Kreis I,* 866 F.2d at 1514 (internal quotation marks omitted).

While any such claims that Jackson can assert under the APA are reviewable by this Court, they are untimely. *See* 28 U.S.C. § 2401(a) (civil actions against the United States must be commenced "within six years after the right of action first accrues"). "Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity and, as such, must be strictly construed." *Spannaus v. DOJ,* 824 F.2d 52, 55 (D.C. Cir. 1987); *see also Lewis v. Sec'y Navy,* 892 F. Supp. 2d 1, 5 (D.D.C. 2012) (same). Section 2401 applies to "all civil actions whether legal, equitable, or mixed," and "likewise applies to claims seeking to correct or upgrade the discharge of former service members." *Kendall v. Army Bd. for Corr. of Military Records*, 996 F.2d 362, 365 (D.C. Cir. 1993). Thus, a challenge to military board of corrections decision must be filed within six years of an adverse review board decision. *See Nihiser v. White*, 211 F. Supp. 2d 125, 128–29 (D.D.C. 2002) (citation omitted). But where a board of correction "reconsiders" a decision, some courts have held that "the reopening doctrine allows an otherwise stale challenge to proceed," *Peavy v.*

10

*United States,* 128 F. Supp. 3d 85, 99 (D.D.C. 2015) (quotations omitted), "provided that the application for reconsideration is filed within six years of the adverse review board decision," *Nihiser*, 211 F. Supp. 2d at 129.

In Jackson's case, the Board issued its initial adverse decision on April 14, 1992. Dkt 8-5. Thereafter, in 1993, 1994, and again in 2000, Jackson applied for reconsideration, but on each occasion the Board refused to reconsider its decision, citing a lack of new and material evidence. On each occasion, Jackson listed the date of discovery as May 18, 1990. Dkt. 8-6; Dkt. 8-7; Dkt. 8-8; Dkt. 8-9; Dkt. 8-10; Dkt. 8-11. Regardless of whether the Board's most recent decision is deemed an "adverse review decision" or a "reconsideration," Jackson's APA claims are time barred because he did not file this action until November 2, 2016, more than twenty-three years after the Board's initial decision and more than sixteen years after the Board's July 17, 2000 final decision.

In an attempt to keep his claims alive, Jackson invokes the equitable tolling doctrine. Compl. at 13. Equitable tolling is an extraordinary remedy that courts apply sparingly. *Norman v. United States,* 467 F.3d 773, 776 (D.C. Cir. 2006). "[M]ere excusable neglect is not enough to establish a basis for equitable tolling; there must be a compelling justification for delay, such as 'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass,'" *Martinez v. United States*, 333 F.3d 1295, 1318 (Fed. Cir. 2003) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)), or where a plaintiff has been unable "despite all due diligence . . . to obtain vital information bearing on the existence of [his] claim," *Holland v. Florida.*, 560 U.S. 631, 649 (2010) (citations omitted). In Jackson's case, no such extraordinary circumstance stood in his way.

Jackson suggests that the statute of limitations should be tolled because he was unaware of the laws that applied to his claims. That reason falls well short of the high bar for equitable tolling. *See Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014) ("The circumstance that stood in a litigant's way cannot be a product of that litigant's own misunderstanding of the law."). Even accepting that Jackson was unaware of his legal rights, he was acutely aware of the alleged underlying acts of discrimination, and the record reveals "no extraordinary circumstances" that prevented Jackson from timely filing suit.

Jackson also claims that he did not realize that he had been subjected to racial discrimination until October 18, 2014 when a friend suggested that he read about employment discrimination law under Title VII, *see* Compl. at 12. But Jackson's initial request for mast in 1989 establishes that he was less unaware than he now claims. *See* Dkt. 8-2 at 7 ("It was an act of discrimination and retaliation. Mr. Rix and Major Walsh are prejudiced against blacks who stand up to them."); Dkt. 1-2 at 3 (alleging that Captain Nelson, Jackson's then-commanding officer, reportedly said, "It took us awhile, but we finally got rid of him. That's one less black staff sergeant."). Jackson claims that officials in his chain of command blocked and frustrated his attempts to obtain assistance in redressing his alleged wrongdoings, *see* Compl. at 11, but his repeated filings and appeals to the Board demonstrate that he was undeterred by his superiors' actions. As Jackson acknowledges, following his discharge, he sought redress not only from the Department of Navy, but also from "the Department of Justice, attorneys, congressmen, new media, etc." *Id.* at 12–13. Therefore, the Court dismisses any APA claims that Jackson can raise as time barred.

### D. Jackson's Remaining Inferred Claims

To the extent that Jackson's request for reenlistment with back pay can be construed as asserting a claim under the Military Pay Act, 37 U.S.C. § 204, and the Tucker Act, 28 U.S.C. § 1346(A)(2),[4] based on an alleged wrongful discharge, this Court lacks jurisdiction. "Absent other grounds for district court jurisdiction, a claim is subject to the Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government." *Kidwell v. Dep't of Army, Bd. for Correction of Military Records,* 56 F.3d 279, 284 (D.C. Cir. 1995). Although it is not clear what portion of Jackson's $300,000 demand for damages constitutes a claim for back pay and related benefits, any such claim likely exceeds $10,000. And even assuming Jackson has a viable claim for back pay less than $10,000, it is barred by the six-year statute of limitations that applies to suits against the United States. Courts "have long held that the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003). Jackson separated from active duty on January 15, 1991, more than twenty-five years before he filed this action.[5]

---

[4] The Tucker Act vests original jurisdiction in the U.S. Court of Federal Claims for civil actions against the United States "founded either upon the Constitution, or any act of Congress, or any regulation of an executive department, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Little Tucker Act gives federal district courts concurrent jurisdiction over such civil actions that do not involve claims over $10,000. 28 U.S.C. § 1346(a)(2).

[5] The Court does not address whether Jackson was required to seek further administrative review before seeking back pay under the Military Pay Act. *Compare Martinez v. United States*, 333 F.3d 1295, 1308 (Fed. Cir. 2003) (service member was not required to exhaust board of correction of navy records remedies before filing a Military Pay and Act Tucker Act suit for back pay and related relief), *with Santana v. United States*, 127 Fed. Cl. 51, 58-59 (2016) (court lacked jurisdiction over Military Pay Act claims that were based on allegations of whistleblower retaliation because service member did not first pursue claims administratively by challenging

To the extent that Jackson bases his demand for damages on a tort claim arising out of his emotional distress, it too fails. The Federal Tort Claims Act grants federal courts jurisdiction over claims arising from certain torts committed by federal employees in the scope of their employment. 28 U.S.C. § 1346. The Court lacks jurisdiction here too because any such claim is untimely and Jackson failed to exhaust his administrative remedies. *See Aguilar Mortega*, 520 F. Supp. 2d 1 (rejecting former service member's Federal Tort Claims Act claim for failure to exhaust administrative remedies).

## CONCLUSION

For the foregoing reasons, the Court will grant the defendant's Motion to Dismiss. Dkt. 8. A separate order consistent with this decision accompanies this memorandum opinion.

*[signature]*
DABNEY L. FRIEDRICH
United States District Judge

Date: May 15, 2018

---

the decision of special selection and continuation boards), *aff'd in part and vacated in part on other grounds*, No. 16-2435, 2017 WL 5632685 (Fed. Cir. 2017).